Argued and submitted February 5, 1993, reversed and remanded in part; otherwise affirmed January 26, petition for review denied May 24, 1994 (319 Or 149)

BENJAMIN CAPITAL INVESTORS,
a California limited partnership,
*Plaintiff,*
*and*

NOW SOFTWARE, INCORPORATED,
an Oregon corporation,
*Appellant,*

*v.*

George COSSEY,
*Respondent,*

*v.*

BENJAMIN CAPITAL INVESTORS,
a California limited partnership,
Now Software, Incorporated, an Oregon corporation,
Craig W. Barnes and Darold L. Barnes,
*Counterclaim Defendants - Appellants.*

(9102-01062; CA A73669)

867 P2d 1388

Richard Baroway argued the cause for appellants. With him on the briefs were Charles D. Davidson and Garvey, Schubert & Barer.

Robert D. Bulkley, Jr., argued the cause for respondent. With him on the brief were Lynn R. Stafford, Lisa A. Kaner and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

### De MUNIZ, J.

Plaintiffs, Benjamin Capital Investors (BCI) and its successor, Now Software, Incorporated, are the publishers of a computer software program called "Prototyper," developed by defendant Cossey. Defendant, a computer programmer, developed Prototyper to simplify programming on the Macintosh Computer. In 1987, defendant and BCI entered into an agreement under which defendant gave BCI the exclusive right to make copies of Prototyper and to market it worldwide. He agreed to develop Prototyper, including making enhancements and resolving problems that arose after the first release, in accordance with BCI's requests. He also agreed to copyright Prototyper in the United States and to protect his rights in it. BCI assumed responsibility for preparing and copyrighting manuals and other documentation for the program and was given authority to set the price and to make other marketing decisions. Defendant's sole compensation was a royalty of 15 percent of all net sales.

The agreement was of indefinite duration, but provided that either party could terminate it if the other failed to cure a material breach after 30 days written notice. BCI agreed that, upon termination of the contract, it would both stop making copies of Prototyper and would return the master copies to defendant. BCI could retain and sell any copies that it had already made, provided that it had paid defendant all royalties then due and would pay him his royalties on the post-termination sales. BCI could not assign its rights under the agreement to any other entity without defendant's written consent, and defendant could not unreasonably withhold that consent.

Defendant delivered Prototyper 1.0 to BCI, which successfully marketed it in early 1988. Defendant continued to work on the program after that release, adding enhancements and correcting problems. BCI incorporated defendant's improvements and published Prototyper 2.0 in 1989. Defendant believed that that publication was premature, because Prototyper 2.0 had a number of unresolved problems and that, therefore, its release would damage his reputation as a programmer. He insisted that BCI issue Prototyper 2.1 to replace Prototyper 2.0. BCI did so, but only after defendant agreed to contribute $6,000 of his royalties toward the cost of

revision. About this time, BCI incorporated as Now Software, Incorporated.

In July, 1990, Now Software notified potential customers that it would begin shipping Prototyper 3.0 by the end of August. On July 29, 1990, defendant sent Now Software a version solely for the purposes of beta testing, which is essential for discovering problems that actual users may have with a program. He labeled that version 3.1b4 and placed notices in the program warning customers that it was a test version. Now Software patched over all indications that it was a beta version, renamed it Prototyper 3.0, packaged it and released it for sale to the public.

Prototyper 3.0 contained a number of serious problems. Defendant demanded that Now Software withdraw the test version, but Now Software refused. It demanded that defendant continue to work on Prototyper and deliver a final version. Defendant refused. In September, Now Software stopped paying royalties to defendant. It continued to sell the test version of Prototyper 3.0 and to withhold defendant's royalties.

Nearly a year later, after it became clear that defendant and Now Software would not be able to resolve their differences, defendant began marketing an improved version of Prototyper under the name Marksman. To make up for the problems that users of Prototyper 3.0 experienced, defendant allowed about 300 purchasers of that version to buy Marksman for only $25, well below the normal price for an upgrade. Now Software sold upgrades from Prototyper 2.1 to Prototyper 3.0 for $79 each.

In October, 1990, defendant sued BCI in California for breach of the agreement. The California court stayed that proceeding on the ground that the agreement provided for Oregon jurisdiction. BCI and Now Software then filed this action against defendant in Oregon, alleging claims for breach of contract, defamation, intentional interference with economic relations and for declaratory relief. Defendant counterclaimed against BCI, Now Software and Craig W. Barnes and Darold L. Barnes, general partners of BCI and shareholders in Now Software (collectively referred to as

plaintiffs). Defendant sought, *inter alia*, damages for breach of contract.

The action was tried to a jury, which returned a verdict finding that plaintiffs and defendant both had breached the contract. The jury awarded no damages to plaintiffs on their contract claim, but awarded defendant $250,000 damages.[1] Plaintiffs appeal, arguing that the trial court erred in holding that the federal Copyright Act did not preempt the trial court's jurisdiction over contractual damages.

In his first counterclaim, defendant alleged that plaintiffs breached the agreement in a number of particulars, including unauthorized reproduction and distribution. Paragraph 26 of his counterclaim states, in part:

"As a result of said breaches [defendant] has been damaged in an amount of all gross receipts from the wrongful sale of the program * * *."

Plaintiffs moved for a directed verdict on defendant's counterclaim for breach of contract or "in the alternative to strike damage claims." In support of the motion, plaintiffs argued:

"The federal courts also preempt the issue of which damages may be claimed by the copyright law and which may be claimed under breach of contract in that area. And defendant's damages are limited to those arising directly under the contract, in this case, royalties."

The court denied plaintiffs' motion and they assign error to that ruling, contending that the portion of defendant's counterclaim for damages for "unauthorized copying of defendant's computer program * * * is preempted by the federal Copyright Act and cannot form a basis for recovery in state court."

A state law claim is preempted by the Copyright Act if: (1) the work at issue is within the subject matter of copyright as defined in 17 USC §§ 102 and 103; and (2) the right created by the state law is equivalent to any exclusive

---

[1] The jury also found that defendant defamed plaintiffs and that he had interfered with plaintiffs' economic relations. It awarded plaintiffs $10 in damages on each claim. The court also found that plaintiffs were entitled to the source code for Prototyper, including enhanced versions. The source code is the version of the program used by the programmer to develop and modify a computer program.

copyright rights enumerated in 17 USC § 106. *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F2d 973 (9th Cir 1987).[2] A state law claim is not preempted if it protects a right qualitatively different from a right granted under the Copyright Act. *Wolff v. Institute of Elec. & Electronics Eng., Inc.*, 768 F Supp 66, 69 (SDNY 1991).

The parties agree that Prototyper is within the subject matter of copyright under 17 USC § 102 and that

"[t]he only issue is whether defendant's [claim for] damages for unauthorized reproduction and distribution is an attempt to enforce rights that are equivalent to any of the exclusive rights of copyright in 17 U.S.C. § 106."

■ Defendant argues that his claim for damages for unauthorized reproduction and distribution of Prototyper 3.0 is qualitatively different from a claim for copyright infringement, because

"[t]he case turns on the Agreement. It, not the Copyright Act, is the source of rights of the parties and the basis for determining plaintiff[s'] breaches. The contract, not the Copyright Act, requires plaintiff[s] to stop making copies and to return the master copy on termination; the contract, not the Copyright Act, allows plaintiff to continue to sell its inventory only upon payment of royalties. Contract law, not the Copyright Act, is the basis for determining defendant's damages."

Defendant is correct with regard to his claim for unpaid royalties under the agreement. However, in addition to unpaid royalties, defendant also sought, as damages, "all gross receipts from the wrongful sale of the program." In support of that claim for damages, defendant requested, and the court gave, the following instruction:

"[I]f you find that plaintiffs sold unauthorized copies of Prototyper, you shall award [defendant] the full amount of

---

[2] 17 USC § 301 provides, in part:

"(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyrights as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

revenue plaintiffs obtained from selling such unauthorized copies."

■■ Plaintiffs' continued sale of Prototyper after termination of the agreement may constitute a breach of the agreement. However, the act of unauthorized sale also violates defendant's *exclusive right*, under the Copyright Act, to control the distribution of Prototyper.[3] The court's instruction made clear that unauthorized sale of Prototyper is the only act supporting that damage claim. When identical predicate acts supply the basis for both a state law claim and a copyright claim, the state law claim is preempted. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F2d 195, 200 (2d Cir 1983), *rev'd on other grounds* 471 US 539, 105 S Ct 2218, 85 L Ed 2d 588 (1985). Accordingly, defendant's damage claim for "the full amount of revenue plaintiffs obtained from selling * * * unauthorized copies" of Prototyper is preempted by the Copyright Act. The trial court erred in denying plaintiffs' motion to strike that damage claim.

The jury returned a verdict awarding $250,000 on defendant's breach of contract counterclaim. The pertinent portion of the verdict form provides:

"4. If you find that plaintiff materially breached the [agreement], what are the defendant's damages, if any? ANSWER: $ 250,000 ."

With this form of verdict, we cannot determine what portion of the jury's award is attributable to defendant's counterclaim for unpaid royalties under the agreement and what portion is attributable to defendant's claim for the "full

---

[3] Under 17 USC § 106, copyright owners have exclusive rights

"to do and to authorize any of the following:

"(1) to reproduce the copyrighted work in copies or phonorecords;

"(2) to prepare derivative works based upon the copyrighted work;

"(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

"(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

"(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly."

amount of revenue plaintiffs obtained from selling * * * unauthorized copies" of Prototyper 3.0. Therefore, in accordance with *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990), we remand on the breach of contract counterclaim.

■   Plaintiffs also argue that defendant's claim for special damages for injury to his reputation is also preempted. We disagree. That claim required defendant to prove that plaintiffs' various acts that breached the contract also caused injury to his reputation. Injury to reputation involves an additional element that is qualitatively different from any claim defendant may have under the Copyright Act. That claim for damages is not preempted.[4]

Judgment for defendant on breach of contract counterclaim reversed and remanded; otherwise affirmed.

---

[4] Plaintiffs also argue that defendant did not present evidence sufficient to sustain any award on his contractual claim of damage to reputation. Because we remand on the breach of contract counterclaim, we need not address that argument.